```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
KARLA VANESSA DIAZ,

                        Plaintiff,
                                                          Decision and Order
        -against-                                         16-cv-2332(ADS)(AYS)

SHANKLIN CORPORATION,

                        Defendant.
----------------------------------------------------------------------x
```

**APPEARANCES:**

**Sacco & Fillas, LLP**
*Attorneys for the Plaintiff*
31-19 Newtown Road, 7th Floor
Astoria, NY 11102
    By:    Richard E. Schirmer, Esq., Of Counsel

**Goldberg Segalla LLP**
*Attorneys for the Defendant*
100 Garden City Plaza, Suite 225
Garden City, NY 11530
    By:    Ellen H. Greiper, Esq., Of Counsel

**SPATT, District Judge:**

Presently before the Court in this diversity product liability case is a motion by the Defendant Shanklin Corporation (the "Defendant"), pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P.") 15(a), seeking leave to file an amended answer.

For the reasons that follow, that motion is granted.

## I.    BACKGROUND

The Plaintiff Karla V. Diaz is a resident of Suffolk County, New York.

On February 11, 2016, she commenced this action against the Defendant, a foreign corporation with a principal place of business in Ayer, Massachusetts, in the New York State Supreme Court for the County of Suffolk. In general, the complaint seeks damages for injuries the

1

Plaintiff allegedly sustained while using a piece of machinery manufactured by the Defendant. The complaint identified the product in question as "Model Number F-5A, Serial Number F936135."

On March 1, 2016, the Plaintiff claims to have served the Defendant with process by serving copies of the summons and complaint on the New York Secretary of State, in accordance with § 306 of the New York Business Corporation Law ("BCL").

In relevant part, an affidavit of service provides that:

> on **3/1/2016** at **3:53 PM**, at the office of the Secretary of State, of the State of New York in the City of Albany, New York, [Paul J. Santspree, Sr., a process server] served a true copy of a **NOTICE REGARDING AVAILABILITY OF ELECTRONIC FILING SUPREME COURT CASES, SUMMONS AND VERIFIED COMPLAINT,** on **SEALED AIR CORPORATION (US) S/H/A SHANKLIN CORPORATION, Defendant** in this action.
>
> By delivering to and leaving with **SUE ZOUKY**, authorized agent in the office of the Secretary of State, State of New York, personally at the office of the Secretary of State, of the State of New York, two (2) true copies thereof . . .

*See* Exhibit "A" to the Nov. 30, 2016 Declaration in Opposition and Memorandum of Law by Richard E. Schirmer, Esq. ("Schirmer Decl."), DE [20] (emphasis in original).

Pursuant to BCL § 306(b)(1), the Secretary of State was required to "promptly send" one copy of the pleading "by certified mail, return receipt requested," to the Defendant "at the post office address, on file in the department of state, specified for [that] purpose," or, if the Defendant had no such address on file, then to "the address of its office within this state on file in the department."

The current record does not indicate the address to which the Secretary of State actually mailed the initial pleading in this case.

Rather, a mailing receipt from the Department of State, Division of Corporations states only that the party served was "Sealed Air Corporation (US)," and that a copy of the pleading was "transmitted pursuant to [BCL § 306] to the address provided for such purpose." *See* Exhibit "A" to the May 9, 2016 Notice of Removal, DE [1-1].

There is nothing in the current record to connect the Defendant Shanklin Corporation to any entity known as "Sealed Air Corporation (US)."

Nevertheless, the Defendant evidently received notice of the action and retained counsel, who, on March 22, 2016, executed a purported stipulation with the Plaintiff's counsel extending the time for the Defendant to answer or otherwise respond to the complaint to April 22, 2016.

A dispute exists regarding a handwritten addendum to the stipulation, stating that the Plaintiff's consent was conditioned on the Defendant waiving any jurisdictional defenses. However, it appears that this language was inserted by the Plaintiff's counsel *after* the Defendant signed and transmitted the stipulation. Defense counsel asserts in a supporting affidavit that she "did not include a waiver of jurisdictional defenses in the stipulation . . . nor did [she] consent to the addition of that language after [she] signed and exchanged the stipulation that [her] office drafted." *See* Dec. 6, 2016 Declaration of Ellen H. Greiper in Further Support of Shanklin Corporation's Motion to Amend its Answer ("Greiper Reply Decl."), DE [21], at ¶ 3. Defense counsel asserts that, had the prospect of waiving jurisdictional defenses been timely presented when the terms of the stipulation were being negotiated, her office "would not have consented to those terms." *Id.* ¶ 4.

In any event, the modified deadline apparently passed without a response by the Defendant, and on May 3, 2016, a second stipulation was executed further extending the answer deadline to June 3, 2016. Of importance, the May 3, 2016 stipulation omitted any language purporting to condition the Plaintiff's consent on a waiver of jurisdictional defenses.

On May 10, 2016, the Defendant removed the action to this Court on the ground that there exists complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.

Following removal, on June 7, 2016, the Defendant filed an answer substantially denying the Plaintiff's allegations and asserting 22 separate affirmative defenses. However, the original answer did not raise any defense based on a lack of personal jurisdiction or improper service.

3

On June 10, 2016, United States Magistrate Judge Anne Y. Shields issued a scheduling order, directing the parties to appear for an initial discovery conference on July 14, 2016.

Further, Judge Shields directed that, prior to the conference date, the parties confer and jointly prepare a proposed discovery plan, including "interim discovery deadlines to meet the needs of their case." To aid in this process, Judge Shields referred the parties to a sample "Discovery Plan Worksheet" that is included as Appendix F to her Individual Practice Rules. The court indicated that it would then "consider the parties' suggested deadlines and, upon consideration of the rules and practices of the assigned District Judge, enter an appropriate scheduling order."

Consistent with this directive, on July 5, 2016, the parties submitted a proposed discovery schedule for Judge Shields' consideration. In relevant part, the proposed schedule established a deadline of October 30, 2016 for either party to seek leave to amend their pleadings.

There is no indication that Judge Shields adopted the parties' proposed discovery schedule. Rather, at the scheduled conference on July 14, 2016, the court entered a Civil Conference Minute Order directing that "Tier 1 Discovery," which is more specifically defined in the order, be completed by August 15, 2016. Judge Shields' order did not specifically establish a deadline for seeking leave to amend the pleadings.

In a joint status report filed on August 15, 2016, the parties reported that all "written" Tier 1 Discovery had been completed, but that at least one item contained in the court's July 14, 2016 order, namely, an inspection of the product in issue, remained outstanding.

On September 26, 2016, the parties again appeared before Judge Shields for a conference. On this date, a second Civil Conference Minute Order reflects that Judge Shields established a deadline of October 25, 2016 for the parties to inspect the product, and directed that a further status report be submitted by October 30, 2016.

On October 28, 2016, the parties reported that an inspection of the product had been completed, thus concluding all Tier 1 Discovery.

On November 1, 2016, Judge Shields entered an electronic order directing the parties to submit a further status report on or before November 30, 2016.

On November 17, 2016, the Defendant filed the present motion seeking leave to amend its answer to assert two challenges to the Court's jurisdiction.

First, the Defendant seeks to raise a defense based on improper service of process. In this regard, defense counsel avers, and the documentary evidence appears to confirm, that "service of process was made upon the New York Secretary of State and directed towards 'Sealed Air Corporation', which is not a party to this action." *See* Nov. 16, 2016 Declaration of Ellen H. Greiper in Support of Shanklin Corporation's Motion to Amend its Answer ("Greiper Decl."), DE [18], at ¶ 8.

Second the Defendant seeks to raise a defense based on the legality of the Court's exercise of long-arm jurisdiction. In this regard, defense counsel avers that her investigation into the alleged facts reveals that the particular product in issue "was not sold in New York State or to a company in New York State." *See* Greiper Decl. ¶ 7. Further, counsel asserts that the Defendant's contacts with New York State are not otherwise sufficient to justify its amenability to suit here. *See id.* ¶¶ 7-8.

With regard to the delay in seeking to assert this defense, counsel noted that the Plaintiff's complaint misidentified the model and serial numbers for the product in question, thereby complicating the Defendant's ability to track its origin and sales history. *See id.* ¶ 3 (noting that, due to an apparent typographical error, the model and serial numbers alleged in the complaint do not exist); *see also* Greiper Reply Decl. ¶¶ 6-7.

In fact, defense counsel asserts that it did not obtain discovery materials from the Plaintiff's non-party employer correctly identifying the model and serial number of the product involved in the Plaintiff's accident until November 2, 2016, and promptly filed its motion for leave to file an amended answer approximately two weeks later. *See id.* ¶ 12.

## II. DISCUSSION

A. The Standard of Review

The Defendant's motion to amend is properly considered under FED. R. CIV. P. 15(a)(2), which directs the Court to freely grant a party leave to amend its pleading when justice so requires. Under this standard, leave "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).

The Court finds no merit in the Plaintiff's argument favoring a more stringent standard. In this regard, the Plaintiff contends that the time for seeking leave to amend the pleadings expired on October 30, 2016, namely, the date designated by the parties in their initial proposed discovery plan. According to the Plaintiff, since the Defendant's motion was made after the applicable deadline, the "good cause" standard found in FED. R. CIV. P. 16 applies. The Court disagrees.

As noted above, Judge Shields neither adopted the parties' proposed discovery plan nor independently established a deadline for making motions to amend the pleadings. Nor is there any apparent basis for concluding that the sample Discovery Plan Worksheet functioned as a binding discovery schedule. On the contrary, Judge Shields' initial scheduling order expressly stated that the court would "consider the parties' suggested deadlines and, upon consideration of the rules and practices of the assigned District Judge, enter an appropriate scheduling order."

Although Rule 16 will sometimes apply even absent a specific deadline in a scheduling order, such a result is only appropriate "where the record contains some indication that the court and the parties understood that the pleadings would not be further amended." *Point 4 Date Corp. v. Tri-State Surgical Supply & Equip.*, No. 11-cv-726, 2012 U.S. Dist. LEXIS 89388, at *17-*18 (E.D.N.Y. June 27, 2012) (collecting cases), *aff'd*, 2012 U.S. Dist. LEXIS 113860 (E.D.N.Y. Aug, 13, 2012).

The record in this case does not so indicate.

Accordingly, the Court will apply the liberal standard articulated in Rule 15 to the Defendant's motion. In doing so, the Court notes that the Plaintiff bears the burden of demonstrating that the proposed amendment is not warranted. *See Ispat Inland, Inc. v. Kemper Envtl., Ltd.*, No. 05-cv-5401, 2007 U.S. Dist. LEXIS 55851, at *4-*5 (S.D.N.Y. July 31, 2007).

B.  As to Whether Sufficient Grounds Exist for Disallowing the Proposed Amendments

The Plaintiff asserts the following grounds for denying the Defendant's motion for leave to interpose an amended answer: (1) the proposed amendments would be futile because, as a condition to extending its time to answer, the Defendant waived jurisdictional defenses; (2) the proposed amendment regarding improper service would be futile for the alternative reason that the Defendant received actual notice of, and appeared by counsel in, the action; (3) the Plaintiff would be prejudiced by allowing the proposed amendment at this late juncture; and (4) the Defendant has acted with bad faith.

In the Court's view, none of these arguments is meritorious.

1.  Futility

Initially, the evidence in the record is insufficient to conclusively establish that the Defendant waived any jurisdictional defenses. On the contrary, the Defendant produced a stipulation extending its time to answer, which was signed by defense counsel only, and which contained no waiver language. It appears clear that the Plaintiff's counsel unilaterally added this language before countersigning, which, as to those additional terms, does not suffice to show a meeting of the minds, let alone a deliberate act on the part of the Defendant to relinquish a known right. *See U.S. D.I.D. Corp. v. Windstream Communs., Inc.*, 775 F.3d 128, 136 (2d Cir. 2014).

An opinion out of the Southern District Bankruptcy Court is instructive. In the case of *Yesh Diamonds, Inc. v. Yashaya*, 403 B.R. 278, 284 (Bankr. E.D.N.Y 2009), *aff'd*, 2010 U.S. Dist. LEXIS 101744 (E.D.N.Y. Sept. 27, 2010), the plaintiff circulated a stipulation extending the relevant deadline to file

a complaint to May 19, 2008. However, upon receiving it, the debtor unilaterally shortened the deadline to May 12, 2008. When a dispute arose over the timeliness of the plaintiff's complaint, which was filed on May 13, 2008, the court considered the legal implications of the debtor's alteration.

In analyzing these circumstances, the court found that there had been "no agreement at all between the parties," since the material terms of the stipulation had not been the subject of a mutual agreement. Drawing on fundamental principles of New York contract law, the court reasoned that "the stipulation sent by the Plaintiff to the Debtor for execution, bearing the May 19, 2008 date, was an offer, and the stipulation returned by the Debtor to the Plaintiff bearing the May 12, 2008 date was a counteroffer." *Id.* at 284-85 (citing cases).

Applying these principles to the present case, the Court finds that, at best, the Plaintiff's conduct in altering a material term in a partially-executed stipulation amounted to a counteroffer, which the Court has no reason to believe the Defendant accepted. Indeed, unlike in *Yesh Diamonds, Inc.*, where the plaintiff was deemed to have accepted the debtor's counteroffer by filing it with the Court, there is no evidence here to suggest that the Defendant expressly or impliedly ratified the Plaintiff's change.

On the contrary, the uncontroverted averments of defense counsel establish that the Plaintiff's attorney never even brought the proposed waiver of jurisdictional defenses to her attention prior to raising that issue in opposition to the present motion. *See* Greiper Reply Decl. ¶ 3 (asserting that the Plaintiff's counsel "never communicated" the proposed waiver of jurisdictional defenses to defense counsel).

In the Court's view, this situation resulted in "no agreement at all" among the parties, and simply caused the Defendant to default on the complaint. As noted above, the parties thereafter

executed what appears to be a valid and binding stipulation on May 3, 2016, which extended, *nunc pro tunc*, the Defendant's time to appear without any mention of a waiver.

The Court also finds no merit in the Plaintiff's contention that, because the Defendant received actual notice of the action, it is precluded from raising a defense based on improper service. Without reaching the merits of whether service in this case was proper, it is enough for the Court to reiterate its observation in the recent case of *Citizens Bank v. Decena*, that "a defendant's actual knowledge of a pending lawsuit is no substitute for proper service." 562 B.R. 202, 210 (E.D.N.Y. Nov. 29, 2016) (Spatt, J.) (collecting cases).

Accordingly, the Plaintiff has not shown that the proposed amendments would be futile.

2.   **Prejudice/Undue Delay**

The Court also finds no merit in the Plaintiff's allegations of prejudice based on undue delay.

"Real prejudice is evidenced by the loss of evidence, the unavailability of witnesses or roadblocks to discovery." *Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 993 (E.D.N.Y. 1995) (citing *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). For example, an amendment might cause prejudice if it would: "(1) require the opponent to 'expend significant additional resources to conduct discovery and prepare for trial,' (2) significantly prolong the resolution of the action, or (3) 'prevent the plaintiff from bringing a timely action in another jurisdiction.' " *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 304 (E.D.N.Y. 2013) (quoting *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000)).

In the Court's view, none of these circumstances is present here.

Rather, the Plaintiff relies exclusively on the Defendant's eight-month delay in seeking leave to amend as a basis for a finding of prejudice. However, it is well-settled that, absent evidence of bad faith or willfulness, delay alone is not usually prejudicial. *See Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234-35 (2d Cir. 1994) (affirming district court's decision to grant leave to interpose an

amended answer containing a new affirmative defense four years after the complaint was filed; finding it persuasive that the defendant assertedly required discovery to substantiate the defense).

This is especially true where, as here, the case is in its early stages; depositions and expert discovery remain outstanding; and no trial date has been set. *See State Farm Mut. Auto. Ins. Co. v. Grafman*, No. 04-cv-2609, 2007 U.S. Dist. LEXIS 96751, at *24 (E.D.N.Y. May 22, 2007) (finding that leave to amend was appropriate since discovery was in the early stages and the case was "nowhere near to being on the eve of trial") (quoting *Am. Med. Assoc. v. United Healthcare Corp.*, No. 00-cv-2800, 2006 U.S. Dist. LEXIS 93864, at *16 (S.D.N.Y. Dec. 29, 2006)).

Nor has the Plaintiff demonstrated that the delay was unjustified.

Rather, in her supporting affidavit, which is substantially uncontroverted, defense counsel details a months-long effort to develop the facts needed to uncover a potential jurisdictional defense. *See* Greiper Reply Decl. ¶¶ 7-12. As noted above, counsel asserts that she did not obtain third-party discovery materials correctly identifying the model and serial numbers of the product involved in the Plaintiff's accident until November 2, 2016. *See id.* ¶ 12. The model and serial numbers are apparently critical to determining where the product was manufactured and sold – facts which may be relevant to a jurisdictional analysis. *See id.* ¶ 6. In the Court's view, the two-week period that subsequently elapsed between counsel identifying the product and seeking leave to include a related jurisdictional defense is objectively reasonable.

This is particularly true given the undisputed fact that the requisite fact-finding was complicated, if not altogether necessitated by the Plaintiff's own misidentification of the product's model and serial numbers in the complaint. Consequently, the Plaintiff may not now be heard to complain that the Defendant took too long in uncovering the accurate product specifications.

Accordingly, the Plaintiff has neither shown prejudice nor undue delay.

3.  Bad Faith

Finally, the Court discerns nothing in the current record which would support a finding of bad faith.

"It is well-established . . . that 'when the opponent of an amendment asserts that the movant is acting in bad faith, there must be something more than mere delay or inadvertence' to warrant denial of a Rule 15 motion." *Oneida Indian Nation v. County of Oneida*, 199 F.R.D. 61, 80 (N.D.N.Y. 2000) (quoting *Primetime 24 Joint Venture v. DirecTV, Inc.*, No. 99-cv-3307, 2000 U.S. Dist. LEXIS 5022, at *19 (S.D.N.Y. Apr. 20, 2000)). Rather, there must be "[a] finding that a party is seeking leave solely to gain a tactical advantage," *id.*, or for some other "improper purpose," *Adams v. City of New York*, 993 F. Supp. 2d 306, 322 (E.D.N.Y. 2014).

The Plaintiff falls well short of this satisfying this standard.

Rather, the Plaintiff appears simply to speculate that the Defendant must have known of its jurisdictional defense sooner, yet participated in this action for several months without ever raising that issue. *See* Schirmer Decl. ¶ 15 (implying that the Defendant sought to amend in bad faith because it was "on notice of the pending litigation"; served discovery requests; and interposed an original answer with "no lack of personal jurisdiction affirmative defense"); *see also id.* (asking, hypothetically, whether it is "not logical to assume that the issue of personal jurisdiction was considered" prior to filing the present motion); *id.* ¶ 16 (inferring bad faith from the Defendant "ask[ing] for the notice of removal to federal court"; "stat[ing] there was subject matter jurisdiction"; omitting "any mention of the lack of personal jurisdiction in the notice of removal"; and "fail[ing] again to mention anything about lack of personal jurisdiction" in the original answer).

Further, the Plaintiff appears to suggest that bad faith can be inferred from the Defendant's failure to acknowledge the waiver of jurisdictional defenses that the Plaintiff unilaterally inserted

11

into the March 22, 2016 stipulation. *See id.* ¶ 15 (emphasizing that the Plaintiff submitted "stipulations which are unsigned and lacking in the waiver of jurisdictional defenses language").

However, there is no credible evidence to substantiate the Plaintiff's theory that the Defendant willfully concealed knowledge of the facts necessary to assert a jurisdictional defense substantially in advance of making this motion. Nor is there any evidence to justify finding that the Defendant is now seeking leave to amend solely to gain a tactical advantage or for any other improper purpose.

Accordingly, the Court finds that the Plaintiff has not set forth any valid grounds to deny the Defendant leave to amend the answer, and the Defendant's motion is granted in its entirety.

### III. Conclusion

Based on the foregoing, the Defendant's motion to interpose the proposed amended answer is granted. The Defendant is directed to file its amended answer on ECF within 10 days of the date of this order.

This matter is respectfully referred to Judge Shields for the completion of discovery.

It is **SO ORDERED:**

Dated: Central Islip, New York
May 19, 2017                        */s/ Arthur D. Spatt*
                                    ARTHUR D. SPATT
                                    United States District Judge